IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| TESTING 123, LLC,<br><br>    Plaintiff,<br><br>  v.<br><br>WILLIAM H. SWIFT,<br><br>    Defendant. | Civil Action No. 24-1097-GBW |

Jeffrey S. Cianciulli, WEIR LLP, Wilmington, Delaware.

 *Counsel for Plaintiff*

Scott J. Leonhardt, Katherine R. Welch, ESBROOK P.C., Wilmington, Delaware.

 *Counsel for Defendant*

**MEMORANDUM OPINION**

October 28, 2025
Wilmington, Delaware

_____
GREGORY B. WILLIAMS
UNITED STATES DISTRICT JUDGE

Pending before the Court is Defendant William Swift's ("Mr. Swift" or "Defendant") Partial Motion to Dismiss Plaintiff Testing 123, LLC's ("Testing 123" or "Plaintiff") Amended Complaint ("Defendant's Motion") (D.I. 11), which has been fully briefed (D.I. 12; D.I. 14; D.I. 15). For the reasons set forth below, the Court denies Defendant's Motion.

I.  **FACTUAL BACKGROUND**

The following are allegations from Plaintiff's Amended Complaint (D.I. 10), which are taken as true for the purpose of resolving Defendant's Motion.

Plaintiff is a limited liability company organized under the laws of the state of Delaware, and maintains a principal place of business in New York. D.I. 10 ¶ 8. The sole member of Plaintiff is Raphy Kohanteb. D.I. 10 ¶ 9. Defendant is an individual and citizen of Georgia. D.I. 10 ¶ 10.

A.  **The March 2022 Loan Documents**

On or about March 14, 2022, Plaintiff entered into three agreements: (1) a revolving line of credit agreement ("RLOCA"), D.I. 10 ¶ 15; D.I. 10, Ex. A; (2) a revolving credit note ("Note"), D.I. 10 ¶ 16; D.I. 10, Ex. B; and (3) a pledge and security agreement ("PASA"). D.I. 10 ¶ 17; D.I. 10, Ex. C.

Under the RLOCA, Note, and PASA (collectively, the "Loan Documents"), Plaintiff agreed to extend loans to the "Borrower." D.I. 10 ¶¶ 18-19. Initially, the principal sum of the Note was $1,125,000. D.I. 10 ¶ 16. The Loan Documents were subsequently amended to add additional entities to the definition of Borrower. D.I. 10 ¶ 20.

### B.     The May 2023 Fourth Amendment, Amended PASA, and Guaranty

On or about May 2, 2023, Plaintiff entered a fourth amendment to the RLOCA that added new Borrowers ("Fourth Amendment"). D.I. 10 ¶ 21; D.I. 10, Ex. D.[1] By the date of the Fourth Amendment, the principal sum of the Note had increased from $1,125,000 to $3,000,000. D.I. 10 ¶ 24.

On or about the same date, Plaintiff entered into an amended pledge and security agreement ("Amended PASA") with the same entities (collectively, the "Debtor"). D.I. 10 ¶ 22; D.I. 10, Ex. F. Paragraph 3 of the Amended PASA granted Plaintiff a security interest to all collateral identified in Exhibit A of the Amended PASA (the "Collateral"). D.I. 10 ¶ 23. Specifically, paragraph 3 of the Amended PASA provides:

> **Creation of Security Interest**. In order to secure Debtor's timely payment of the Obligations and timely performance of each and all of its covenants and obligations under this Agreement, the Subscription Documents, and any other document, instrument or agreement executed by Debtor or delivered by Debtor to [Plaintiff] in connection with the Obligations, *Debtor hereby unconditionally and irrevocably grants, pledges and hypothecates to [Plaintiff] a continuing security interest in and to, a lien upon, assignment of, and right of set-off against, all presently existing and hereafter acquired or arising Collateral.* Such security interest shall be a first priority security interest. Such security interest shall attach to all Collateral without further act on the part of [Plaintiff] or Debtor.

D.I. 10, Ex. F ¶ 3 (emphasis added).

Also on or about the same date, May 2, 2023, Plaintiff and Defendant executed a personal guaranty (the "Guaranty") in favor of Plaintiff. D.I. 10 ¶ 22; D.I. 10, Ex. E. Paragraph 1 of the Guaranty provides: "[Defendant] hereby absolutely and unconditionally guarantees to [Plaintiff]

---

[1] The Borrowers listed in the Fourth Amendment are Todos Medical Ltd., Todos Medical USA, Inc., Todos Botanicals LLC, Corona Diagnostics LLC, Provista Diagnostics Inc., Breakthrough Diagnostics, Inc., American Laboratory Services, Inc., and Newstar Medical Laboratories, LLC ("Newstar"). D.I. 10, Ex. D.

3

and its successors and assigns the payment of the principal balance of the Note, that is owed in connection with the first three hundred and fifty thousand dollars ($350,000) . . . ." D.I. 10, Ex. E ¶ 1. The Guaranty further states that "[Defendant's] obligations under this Guaranty are secured by all of their assets including those certain assets and property enumerated in 'Exhibit A' of a Security Agreement executed between [Plaintiff] and [Defendant], of even date herewith." D.I. 10, Ex. E ¶ 18.

### C. The Borrowers' Default Under the Loan Documents

Plaintiff advanced loans to the Borrower based on invoices that the Borrower had made to clients. D.I. 10 ¶ 39. The Borrower was supposed to, but did not, use payments from its clients to repay the loans received from Plaintiff. D.I. 10 ¶ 40. On "multiple occasions," the Borrower voided invoices after Plaintiff had advanced funds to the Borrower based on those invoices, and "on other occasions," the Borrower received payments from clients based on invoices factored by Plaintiff, but used those funds for purposes other than to repay the loans issued by Plaintiff. D.I. 10 ¶¶ 42-43.

Ultimately, the Borrower failed to make timely payments to Plaintiff under the Loan Documents. D.I. 10 ¶ 37. On or about January 30, 2024, Plaintiff "executed its rights under the Loan Documents by conducting a sale of the Borrower's collateral on or about January 30, 2024." D.I. 10 ¶ 44. After applying those proceeds, Plaintiff is still owed approximately $3 million. D.I. 10 ¶ 45.

### D. Defendant's Alleged Conversion

On or about August 2, 2023, Plaintiff caused a "UCC Financing Statement evidencing its security interests against Newstar to be filed with the Clerk of the Superior Court of Cobb County, Georgia." D.I. 10 ¶ 48; D.I. 10, Ex. G. After default of the Loan Agreements, "[Mr. Swift] converted Collateral in the form of laboratory equipment, including but not limited to the

4

equipment listed in Exhibit H [of the Complaint], in violation of Testing 123's rights to that Collateral." D.I. 10 ¶ 49. Furthermore, "[Mr. Swift] and his counsel admitted his conversion of said Collateral to Testing 123 in or about February, March, and April of 2024." D.I. 10 ¶ 50.

## II. PROCEDURAL HISTORY

On January 31, 2025, Plaintiff filed its Amended Complaint.[2] D.I. 10. The Amended Complaint alleges causes of action against Defendant for breach of contract (Count I) and conversion (Count II). *Id.*

On February 14, 2025, Defendant filed his Motion, which seeks to dismiss Plaintiff's conversion claim. D.I. 11; D.I. 12. On February 28, 2025, Plaintiff filed its opposition to Defendant's Motion. D.I. 14. Plaintiff's opposition brief referenced and attached several exhibits that were not attached to the Amended Complaint.[3] On March 7, 2025, Defendant replied to Plaintiff's opposition. D.I. 15.

## III. LEGAL STANDARD

To state a claim on which relief can be granted, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Such a claim must plausibly suggest "facts sufficient to 'draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Doe v. Princeton Univ.*, 30 F.4th 335, 342 (3d Cir. 2022)

---

[2] Plaintiff filed its original complaint on October 2, 2024. D.I. 1. Defendant moved to dismiss the original complaint on January 10, 2025. D.I. 6. After Plaintiff filed its Amended Complaint (D.I. 10), the Court denied-as-moot Defendant's motion to dismiss the original complaint on September 17, 2025. D.I. 16.

[3] As Plaintiff concedes, these exhibits were not "attached to or incorporated in the Amended Complaint." D.I. 14 at 13 n.6. Rather, they were submitted "to respond to Defendant's argument that the Court should deny leave to amend." *Id.* Plaintiff asserts that the Court "cannot consider them when ruling on Defendant's [M]otion." *Id.* Therefore, the Court has not considered these exhibits, nor the portions of the arguments referencing them, when resolving Defendant's Motion. *See, e.g.*, D.I. 14 at 11-14; D.I. 15 at 2, 6-8.

5

(quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "A claim is facially plausible 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Klotz v. Celentano Stadtmauer & Walentowicz LLP*, 991 F.3d 458, 462 (3d Cir. 2021) (quoting *Iqbal*, 556 U.S. at 678). But the Court will "disregard legal conclusions and recitals of the elements of a cause of action supported by mere conclusory statements." *Princeton Univ.*, 30 F.4th at 342 (quoting *Davis v. Wells Fargo*, 824 F.3d 333, 341 (3d Cir. 2016)).

In evaluating a motion to dismiss, "[t]he issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Pinnavaia v. Celotex Asbestos Settlement Tr.*, 271 F. Supp. 3d 705, 708 (D. Del. 2017) (quoting *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1420 (3d Cir. 1997)), *aff'd*, 2018 WL 11446482 (3d Cir. Apr. 6, 2018). Rule 12(b)(6) requires the Court to "accept all factual allegations in a complaint as true and take them in the light most favorable to [the plaintiff]." *Brady v. Static Media*, No. CV 23-1078-GBW, 2024 WL 4103719, at *2 (D. Del. Sept. 6, 2024).

"A motion to dismiss 'may be granted only if, accepting all well-pleaded allegations in the complaint as true, and viewing them in the light most favorable to plaintiff, plaintiff is not entitled to relief.'" *McCrone v. Acme Markets*, 561 F. App'x 169, 172 (3d Cir. 2014) (quoting *Burlington Coat Factory*, 114 F.3d at 1420). The "movant bears the burden of demonstrating that the complainant failed to state a claim upon which relief may be granted." *Abbott Diabetes Care, Inc. v. Dexcom, Inc.*, No. CV 23-239 (KAJ), 2024 WL 2804703, at *1 (D. Del. May 31, 2024).

## IV. DISCUSSION

Defendant contends that Plaintiff's conversion claim should be dismissed because Plaintiff has "failed to plead the specific property allegedly converted by [Defendant] or give [Defendant] fair notice of the grounds upon which its conversion claim rests." D.I. 12 at 8. As set forth below,

because Plaintiff has sufficiently described the allegedly converted property and adequately pled its grounds, Defendant's Motion is denied.

In Delaware, "[c]onversion is an 'act of dominion wrongfully exerted over the property of another, in denial of his right, or inconsistent with it.'" *Foley v. Session Corp.*, No. 2023-0186, 2025 WL 2612595, at *7 (Del. Ch. Sept. 9, 2025) (quoting *McGowan v. Ferro*, 859 A.2d 1012, 1040 (Del. Ch. 2004), *aff'd*, 873 A.2d 1099 (Del. 2005)). "The necessary elements for a conversion under Delaware law are that a plaintiff: (1) had a property interest in the converted goods; (2) had a right to possession of the goods; and, (3) the property was converted." *CLP Toxicology, Inc. v. Casla Bio Holdings LLC*, No. 2018-0783, 2021 WL 2588905, at *14 (Del. Ch. June 14, 2021) (citing *Gould v. Gould*, 2012 WL 3291850, at *7 (Del. Ch. Aug. 14, 2012)). "Conversion need not be accompanied by 'a subjectively wrongful intent' to be actionable." *Cannon v. Romeo Sys., Inc.*, No. 2021-0171-PAF, 2025 WL 2848069, at *32 (Del. Ch. Oct. 7, 2025) (quoting *Segovia v. Equities First Hldgs., LLC*, 2008 WL 2251218, at *19 (Del. Super. Ct. May 30, 2008)). "A person who mistakenly believes that his or her conduct is legal may nonetheless commit conversion." *Id.* (quoting *Segovia*, LLC, 2008 WL 2251218, at *19).

Defendant's assertion that the property was not pled with sufficient detail rests on two cases, *Touch of Italy Salumeria & Pasticceria, LLC v. Bascio*, No. 8602, 2014 WL 108895 (Del. Ch. Jan. 13, 2014) and *Macrophage Therapeutics, Inc. v. Goldberg*, No. 2019-0137, 2021 WL 2582967 (Del. Ch. June 23, 2021). *See* D.I. 12 at 7-9. These cases, however, are both distinguishable.

In *Touch of Italy*, the court dismissed a conversion claim because the plaintiffs had failed to identify the property that was allegedly converted with sufficient detail. *Touch of Italy*, 2014 WL 108895, at *7. In *Touch of Italy*, it was alleged that one of the two plaintiffs "was the sole

7

legal owner of all assets held in or on behalf of the business known as Touch of Italy." *Id.* The plaintiffs then alleged that one of them "is, *and/or was*, entitled to legal possession of all assets of the business known as Touch of Italy, including but not limited to, bank account deposits, business income, equipment and inventory, customer and vendor list[s], goodwill in its community, etc," and that "[d]efendants have exercised dominion and control over *certain of* the above stated assets to the exclusion of [the plaintiffs]." *Id.* (emphasis in original). The court held that a claim was not stated because the allegations had not sufficiently identified the property owner, had not alleged any "specific property," and had instead only identified "broad categories of property," noting that the defendants "exerted control over 'certain' items" within those categories. *Id.*

In *Macrophage*, relying on *Touch of Italy*, the court found that the plaintiff had not met its burden of proving conversion at trial because the plaintiff claimed that the defendant had converted its "intellectual property" but had not substantiated what "intellectual property" had allegedly been converted. *Macrophage*, 2021 WL 2582967, at *21 ("Macrophage has elected to stop short of *identifying* the intellectual property and apparently would have the Court sift through the *trial record* to find it on its own.") (emphasis added).

In this action, Defendant claims the language recited in the conversion count, "laboratory equipment, including but not limited to the equipment listed in Exhibit H [of the Complaint]," fails to adequately describe which items Defendant allegedly converted. D.I. 12 at 6-8. The Court disagrees.

Here, Plaintiff has provided a detailed list of allegedly converted laboratory equipment. D.I. 10, Ex. H. The list describes 35 pieces of laboratory equipment and their value, model, supplier, and serial number. *Id.* For example, the exhibit lists that one of the allegedly converted items is the "Biosafety Cabinet 1," which is supplied by NuAire, worth $5,000, and bears the

8

model number 425-400 and serial number 94190102104. *Id.* The phrase "including but not limited to" modifies the noun "laboratory equipment," which provides scope as to the nature of the property alleged to be taken. Moreover, as Plaintiff points out (D.I. 14 at 8), both *Touch of Italy* and *Macrophage* involved situations where the alleged property had been in the possession of the plaintiff (or plaintiffs) prior to the alleged conversion. *See Touch of Italy*, 2014 WL 108895, at *7 (noting that "knowledge of what property has allegedly been converted is *with the plaintiff*, who has a right to possession and thus is presumptively aware of what has been taken from him") (emphasis added); *Macrophage Therapeutics, Inc. v. Goldberg*, 2021 WL 2582967, at *21 ("Light on specifics, Macrophage's conversion claim rests on the contention that Dr. Goldberg converted *Macrophage's* 'intellectual property.'") (emphasis added). Conversely, it is not alleged that Plaintiff ever had possession of the laboratory equipment allegedly converted by Defendant. *See* D.I. 14 at 8. Given that the alleged property is either possessed by or has been disposed of by Defendant, and has not been possessed by Plaintiff, this description suffices. In sum, Defendant has been given sufficient "notice of what property is subject to the claim." *Touch of Italy*, 2014 WL 108895, at *7.

Unlike the plaintiffs in *Touch of Italy*, Plaintiff in the instant action has clearly alleged the owner of the property interest (Plaintiff), described the nature of the property taken (laboratory equipment), and provided examples of the property (e.g., the NuAire Biosafety Cabinet). *Cf. Touch of Italy*, 2014 WL 108895, at *7. Also, this is more detail than was provided in *Macrophage* and has been provided at a much earlier stage of the litigation. *See Macrophage*, 2021 WL 2582967, at *21 (noting that the claim was "[l]ight on specifics"); *see also Dettmering v. VBit Techs. Corp.*, No. CV 22-1482, 2024 WL 3617604, at *6 (D. Del. Aug. 1, 2024) (noting that *Macrophage* "was a post-trial decision focused on proof of the elements by a preponderance of

9

the evidence" and that neither side could point to "any authority" imposing a requirement that the plaintiff must specify how defendants were "individually responsible for converting [plaintiff's] property" at the motion to dismiss stage), *report and recommendation adopted*, No. 22-1482, 2024 WL 4723250 (D. Del. Nov. 8, 2024). Thus, the Court finds that the property described in Exhibit H of the Amended Complaint in this action has been described with adequate specificity.

As for the adequacy of the pleading, Defendant contends that the Amended Complaint alleges Defendant's conversion in a conclusory fashion as to the nature of the alleged conversion, leaving him "in the dark as to what conduct he is being asked to defend." D.I. 12 at 8; *see also* D.I. 15 at 4-5 (similar). Specifically, Defendant focuses on Plaintiff's allegations that Defendant "converted" the Collateral. D.I. 12 at 8 (citing D.I. 10 ¶ 49). The Court is similarly unpersuaded.

Plaintiff alleges that the Loan Documents granted it an interest in the Collateral, and further claims that Defendant has converted said Collateral. D.I. 10 ¶¶ 49-50. Specifically, Plaintiff's conversion claim builds upon the factual allegations in the Amended Complaint and recites that Defendant "possessed or disposed of . . . Collateral as if it were his own." D.I. 10 ¶ 65. In short, Plaintiff has alleged that it has a lawful interest in the allegedly converted property, and that Defendant acted contrary to those interests by converting that property (i.e., by possessing or disposing of that property). *See Dettmering*, 2024 WL 3617604, at *6; *see also Israel Disc. Bank of New York v. First State Depository Co., LLC*, No. 7237-VCP, 2013 WL 2326875, at *20 (Del. Ch. May 29, 2013) ("By taking possession of the property, selling the Collateral, and failing to return it, [defendant] wrongfully committed a distinct act of dominion over the Collateral as if it were its own.").

To the extent that Defendant disputes the "when" and "how" of the alleged conversion (*see* D.I. 12 at 8-9), the Court finds that the facts alleged in the Amended Complaint, when viewed in

the light most favorable to Plaintiff, are sufficient to state a claim. As outlined above, Plaintiff alleges that it exercised its rights under the Loan Documents following default by the Borrower and conducted a sale of the Collateral on or about January 2, 2024. D.I. 10 ¶ 44. Because the allegedly converted laboratory equipment is part of that Collateral, these facts are sufficient to support the reasonable inference that Plaintiff was entitled to possession of the Collateral, including the allegedly converted laboratory equipment, on or about January 2, 2024. *RoboticVISIONTech, Inc. v. ABB Inc.*, 726 F. Supp. 3d 364, 367–68 (D. Del. 2024) (citing *Fed. Trade Comm'n v. AbbVie Inc.*, 976 F.3d 327, 351 (3d Cir. 2020) ("Under Rule 12(b)(6), the Court must accept as true all factual allegations . . . and view those facts in the light most favorable to the plaintiff.")). Under Delaware law, Plaintiff need not have alleged facts showing Defendant's subjective intent. *Cannon*, 2025 WL 2848069, at *32. Thus, Plaintiff's allegations that Defendant converted the allegedly converted property, in contravention of Plaintiff's property and possessory interests, are sufficient.

The remaining cases raised by Defendant in reply as to the substance of Plaintiff's allegations, *TSMA Franchise Systems, Inc. v. TS of Kings Highway Inc.*, No. 20-11088, 2021 WL 2660300 (D.N.J. June 28, 2021) and *DeLeon v. Robinson*, No. 2:23-CV-01452-JAD-NJK, 2024 WL 5056020 (D. Nev. Dec. 9, 2024), are inapposite. *See* D.I. 15 at 2-3. Both cases are factually distinguishable.

In *TSMA Franchise*, the defendants brought a counterclaim against the plaintiff and crossclaims against third party defendants, alleging that "[p]laintiff and its principals and agents, including but not limited to [t]hird-[p]arty [d]efendants, improperly withdrew from the Sterling account . . . money that []belonged to [d]efendants and [d]efendants have an immediate right to possession of it." *TSMA Franchise*, 2021 WL 2660300, at *11. The *TSMA Franchise* court found

11

that a claim was stated as to the plaintiffs, but was not stated as to the third-party defendants. *Id.* at *11 (applying New York law) ("The Court agrees that [d]efendants do plead additional facts as to the conversion claim and, in any event, declines to dismiss the conversion claim at this stage."). The third-party defendants were only alleged to have "informed" the defendants that there were insufficient funds in the relevant bank account, and were not alleged to have committed any acts interfering with defendant's rights in the property. *Id.* at *12. Here, however, Plaintiff has alleged Defendant's interference with its possessory rights to the allegedly converted property.

In *DeLeon*, the complaint contained "a single factual allegation" with no facts describing either the relevant personal property or the relevant "acts of dominion wrongfully exerted." 2024 WL 5056020, at *1, *3 (applying Nevada law). In the instant action, Plaintiff has plausibly alleged both the relevant personal property and the acts of dominion.

In sum, Plaintiff has adequately stated a claim for conversion of property. The Court has considered Defendant's additional arguments and finds them unpersuasive.[4]

## V. CONCLUSION

For the above reasons, Defendant's Motion is denied. An Order consistent with this Memorandum Opinion will be entered.

---

[4] *See, e.g.*, D.I. 15 at 2, 6-8 (discussing futility of amendment considering the exhibits attached to Plaintiff's opposition brief).

12